May it please the Court. Theodore Bartholow for Plaintiff's Appellants Patterson, Adams and Jordan, and I'd like to reserve five minutes for rebuttal. Your Honors, in this case, we ask the Court to reverse the District Court's Rule 12b-6 dismissal of Plaintiff's FCRA claim that Wells Fargo violated 15 U.S.C. 1681b-F by obtaining the Plaintiff's consumer reports from early warning a consumer reporting agency without a permissible purpose. We ask the Court to remand the matter for further proceedings. We further ask the Court to reverse dismissal of the willfulness remedies claim under 15 U.S.C. 1681n as well as the negligence remedies claim under Section 1681o. Your Honors, this Court should reverse the District Court's ruling which disregards Congress's intent in this Court's clear and binding precedent in the NIAB case by improperly applying a reasonable belief standard to evaluate Plaintiff's allegation that Wells Fargo obtained their credit reports without a permissible purpose after opening unauthorized checking accounts in Plaintiff's names. Importantly, the complaint does not allege that an imposter or some third party opened the accounts. The complaint alleges Wells Fargo opened these accounts, and that's all that we actually know. The District Court, however, imputed the opening of these accounts without anything in the second amended complaint alleging that fact to third parties or imposters and assumed that fact in reaching its conclusion. I guess I don't understand that because I thought as part of your allegations was that an application to open an account was submitted to the bank. The allegation is that an application was submitted to the bank. Again, it's not clear whether – we know, for example, from Wells Fargo's past history that the bank itself has submitted applications internally. Let's focus on the complaint here. Yes. Focus on the complaint, not past history in other cases. The complaint uses the word application. That's correct, Your Honor. We don't have the application. That was a term that we used in preparing the complaint because we presume that any time an account is opened, that it is open pursuant to an application. The answer to Judge Forrest's question is yes. If that's just a yes, it wasn't a true question. You've alleged that there was – an application was submitted to Wells Fargo, right? Yes. Didn't you allege that some of the – there was an earlier check by LexisNexis that indicated that at least for two of these plaintiffs, the information and the PII didn't all match up? That's correct. Okay. Then the accounts were open from that point. Then there was a request for credit reports, and your contention is that those were not for a permissible purpose. I think your argument has to be that the district court couldn't have inferred a permissible purpose from the complaint. Well, Your Honor, we think that the plausibility standard applies in our favor and requires inferences in our favor and not inferences in favor of Wells Fargo's position. Right, because we're at the 12B6 stage, and we don't even have an answer here, right? Correct. Okay. And so I'm trying to figure out what the district court thought. It's not entirely clear which part of the statute she relied upon, except she seems to have adopted Wells Fargo's argument, and we know what part Wells Fargo was pointing to when part of the statute, A3A, when it talked about having had a permissible purpose. Yes? We are aware of both potential interpretations. We agree with the court that, in fact, the opinion is at best ambiguous about which interpretation the court followed. However, we think that the language that the court used is more in line with an A3A analysis rather than an A3F analysis argued by Wells Fargo. But in either event, the analysis depended on facts that were not pleaded in the complaint, and that's the fundamental problem here that requires reversal. Okay. So before you scoot away from that, the argument about what the judge thought was reasonably inferable, I'm inferring what I think the judge inferred, is that there was a permissible purpose because once a customer is a customer, then banks are free to order credit reports for purposes of marketing. Even then, I have a problem because I think under our Pintos rationale, I don't think that's right if it's not a consumer-initiated transaction. You took the words out of my mouth, Your Honor. In fact, that's what Pintos and Andrews both support, and those are, you know, binding circuit precedent and consistent with NIAB. We don't have to plead exclusion of all permissible purposes. It is an affirmative defense that belongs to Wells Fargo, which at this stage of the litigation has not, in fact, been asserted, right? We're pre-answer. Well, they may be able to show it eventually. I don't see how – we'll hear from opposing counsel in a minute. The only other option I think is 1681Bc. But in that instance, if they'd been consumers who were customers, I think that the bank would still have to have made a firm offer of credit, and they don't make any representation here that that's what they did. They don't make any representation, nor does the second amended complaint make any such representation. So we think in that sense it's a very clear violation of the basic Rule 12 standard for analysis of motions to dismiss. I want to go on to your arguments about injury. Well, before we do that, I have a question I want to follow up about the Jordan plaintiff. Yes, Your Honor. So my understanding of the complaint is that we don't have an allegation that the personal identifying information as to Jordan was incorrect in terms of the LexisNexis check. And so then on that specific account, the bank didn't have a reason to know that the application was false or there was something problematic with it. So why isn't the district court's decision correct at least as to Jordan? So I think there's sort of an incorrect inference in the district court's analysis because they presume the fact that we don't know what information they had from Ms. Jordan to entail Wells Fargo in fact having correct information from Ms. Jordan. They don't allege that it had incorrect, that it was given incorrect information when it verified or did a check on an identity. So perhaps a little background that's helpful for this. When Ms. Jordan ordered her early warning report after canceling the Wells Fargo account, the report that she received was devoid of any mention of that Wells Fargo account. It mentioned the unauthorized credit pulls, but it doesn't mention the account, and therefore it doesn't mention the personal identification information Wells Fargo associated with that account. Therefore, we allege that they opened an unauthorized account and pulled her credit without her permission, which is consistent with the much more basic allegations this court held to be sufficient in the NIAB case. So in a sense, the Jordan case is cleaner than the Adams and Patterson cases because it's just NIAB. Well, maybe I'm just not getting it, but what fact or inference can I draw from the facts that you've given me for the bank to know that the Jordan application shouldn't have been acted on? Well, I think that's the point, is the court doesn't need to know whether the Jordan application should have been acted on because what we allege is only that Wells Fargo opened an account in Jordan's name without her consent, something that Wells Fargo has a practice and history of doing, and then obtained her consumer credit report when she had no existing relationship with Wells Fargo. My point is, since you didn't allege as to that plaintiff that there was this discrepancy, your point is, in fact, you attribute knowledge to Wells Fargo, that they knew there was a discrepancy as to the other two. That's correct. Okay, but as to Jordan, you don't allege that. And so we're getting back to the pleading standard, right? We only have the complaint, and I think the point of Judge Forrest's question is why wouldn't it have been a reasonable inference for the judge to have decided that if the judge bought the argument that Wells Fargo advanced quite strenuously, that they were free to run credit reports on any existing customer, then I think there'd be a problem vis-a-vis Jordan. The way I get around that and still think we've got a problem is even as to Jordan is that there's the Pintos case. And so under Pintos, if an application comes in clean and the bank has done its due diligence and still isn't on notice that this is not its bona fide customer, I don't think the law in the Ninth Circuit is that Wells Fargo was free to run a credit report, not unless that's a consumer-initiated transaction, and there's no allegation of that here. More to the point, Your Honor, we would contend that, in fact, the analysis which seeks to import the out-of-circuit opinions in Bickley and DeMonte is sort of putting cart before horse insofar as the reasonable belief concept is really better understood as a defense to a negligence or willfulness liability rather than as a defense to that initial unauthorized pull, right? So as you indicated, in Pintos, the fact that Jordan didn't voluntarily get drawn into that transaction, then Wells Fargo should have the burden of coming forward with evidence as to why it had a permissible purpose, and if not, why its pulling of her credit was not negligent and not willful. Well, they may be able to show that at summary judgment. They may be able to show they made a firm offer of credit at summary judgment. I just don't think we see it in the Second Amendment complaint. We agree entirely with the Court in that regard. The Court was beginning to ask the question about injury, which I think is perhaps a more interesting question and is important to us insofar as the... The negligence claim, that's the one that's most problematic. That's the negligence claim, right? The 1681-0 claim, Wells Fargo has argued that our allegations of injury are insufficient. Now, certainly we make basic allegations of emotional distress, humiliation, and the types of injuries that are associated with a traditional tort of intrusion upon seclusion and those kinds of invasions of privacy, which Judge Alito recognized in the Spokio case as being equivalent to this type of... We're not talking about standing. We're talking about the element of the cause of action. Your Honor, we're not talking about standing either because the actual cause of action itself in the intrusion upon seclusion context, right, this is, you know, torts 101, is that injury is presumed, right, upon a determination of the violation. That means that it's a matter for the fact finder to determine the quantity, and they may decide that the damages are nominal. They may decide the damages are astronomical. Counsel, I know you want to save some time for rebuttal. I'm just trying to figure out if that is your answer to our question about I don't think you're pushing back that you're required to show actual injury, right? We are not required to show actual injury, but our position is that a showing of a violation of this substantive material section of the Fair Credit Reporting Act entails implicitly, inherently, like a strict liability, an injury because it's an injury to the consumer's privacy. So what you're saying is that you don't think there's any daylight between the injury that's necessary in this cause of action to show Article 3 standing and the injury necessary to survive a motion to dismiss as an element of a claim? Not for this particular violation. Thank you, Your Honor. Thank you. I'm going to take yes for an answer and stop you there if I could. So we'll save your time for rebuttal, and we'll hear from Wells Fargo, please. May it please the court. Shelaca Kotia, here on behalf of Wells Fargo and Wells Fargo Bank. For plaintiffs to survive a motion to dismiss, they had to allege that there was a consumer report, that Wells Fargo used that report, and that Wells Fargo did not have a permissible purpose. And the plaintiff fails at this third step. This court's decision in NIAID requires plaintiffs to provide allegations for a court to infer that Wells Fargo did not have a permissible purpose. And this is plaintiff's initial burden. And even then, to survive the motion to dismiss, plaintiffs must sufficiently allege the requisites they enter. If they fail at either step, their claim should be dismissed and were properly dismissed. And it's our position that they fail at both. In fact, the only plausible reading of the complaint is that Wells Fargo had a legitimate business need in connection with a transaction it believed was initiated by the consumer. And this is a permissible purpose under 1681Ba3f. The complaint states at paragraph 21 that Wells Fargo engaged early warning services for additional identity verification and risk assessment. This is a legitimate business need. So is it your position that if Wells Fargo wasn't on notice of any PII abnormality, they just got an application, and then they say these folks are customers of the bank, that Wells Fargo is permitted to order credit reports on their customers? Yes, with a caveat that in the face of both consistent and conflicting PII, the bank is not deprived of a permissible purpose to engage in additional identity verification and risk assessment. So how do we know that? I mean, I know that's the bank's argument. It's permissible. We do this as a business action. But this is a legal test that we're applying, and so it's not just the bank's word that this is a permissible business practice. So what's the authority that tells us that this counts? Well, Your Honor, I would direct this court to a sister circuit's opinion in Bickley in the Sixth Circuit, where it identifies, and it was a matter of first impression before that court, but identifies identity verification and eligibility for services expressly as being a permissible purpose. So my problem there is that the credit report is pulled after the account is opened. So if the credit report was pulled before the account was opened, that would make sense to me. I'm checking to see if you're a worthy customer, if you meet the terms of my account requirement, whatever it is, right? But the bank has already issued the account, opened it up, decided, made that decision, and then pulls the credit. Yeah, well, I would ask this court to consider that the application to open account does not end at the point of the account opening. How do we know that in the record? I'm sorry? How do we know that in the record? Well, this isn't based on the record, but this is reading the allegations in the complaint. It's someone applying for having an account, opening an account, and having that account. And I will say that the allegations in the complaint do expressly allege that Wells Fargo engaged with early warning services, and it says additional identity verification and risk assessment. And I think that is some of the language that would support an interpretation that there's more than that. And I also want to dive in just briefly in response to your question, Your Honor, to the facts that are alleged in the complaint. So there's three named plaintiffs here. And the facts allege as to one of those named plaintiffs talks about this LNRS identity verification and that Wells Fargo was faced with both consistent and inconsistent PII when it ran the additional verification. That LNRS check is not alleged as to either of the other two named plaintiffs, as to Adams or Jordan. So at the time that Wells Fargo did obtain that application, and we now know later only as a product of the credit inquiry that there was some consistent and inconsistent PII's to Adam. And all consistent PII, as far as we understand, as to Ms. Jordan, that information did not become available to Wells Fargo until after running the credit inquiry. So to let Wells Fargo, the determination as to whether or not Wells Fargo had a permissible purpose in running the credit inquiry, rise on fall on the outcome of the credit inquiry would basically debilitate the bank from being able to run a credit inquiry when it believes that it's facing an application or it's dealing with an application by a legitimate consumer. So it's your position that if this, what we have in the record is they ran the first report to open the accounts, that the accounts were opened, and then they ran the credit check. That's what we have in our record. And they need a permissible purpose to do that. And your contention is that the permissible purpose was what? It's the additional identity verification, because they did have the account. The additional identity verification to maintain the account, to keep the account, because they ran the initial check, and they only ran the initial check. And this is, I understand it's a question of timing. But I also think. It's a question of we're at the 12B6 level. So we're not at SJ. And you're citing cases, and you did before the district court, too, that were at summary judgment. And you're citing cases from other circuits. But what about our law in the Ninth Circuit? What about the Pintos case, counsel? Yes, Your Honor. I'd be happy to address the Pintos case. I think part of why I think Pintos is distinguishable here is twofold. One, the court expressly in Pintos was only dealing with a credit transaction under 1681BA3A. And here we don't have a credit transaction. We're talking about the opening of an account. Well, I don't even know if we are. That's the problem. It certainly seems to us on this record that the account had been opened. And we're just, again, you may be able to prove this or raise an issue of fact at summary judgment. But on this complaint, the fair inference is, just take one more run at this, why we should affirm because there's a fair inference without drawing inferences in favor of your client. Because we cannot do that here. Yes, Your Honor, I understand. And I do acknowledge that the accounts were opened before the early warning services check for all three named plaintiffs. But I think it's really important to understand that Wells Fargo, for Adams, let's look at Adams and Jordan specifically here. They had not run, it's not alleged on the face of the complaint, and I'm construing those in a way that's favorable to the plaintiff, but it's not alleged that Wells Fargo actually had identified any conflicting or inconsistent PII at the stage where it opened the account. So it did receive the application, it opened the account, and it immediately is running the, it pulls the credit report. And only then is it made aware of whether or not there's consistent or inconsistent PII. So I don't think Wells Fargo's purpose of identity verification stopped at the point of the technical account opening because they continue to want to confirm. How do we get that from the plaintiff's complaint? How do we get Wells Fargo's purpose that you're describing from the plaintiff's complaint? Well, I think it's, I mean, they, even on the face of the complaint, they allege that there was the use of LNRS for identity verification and continued additional identity verification with the EWS. But I also think there's an additional point that it's evaluating this individual, pulling the credit report for eligibility for services and risk assessment. And that risk assessment is also assessed on the face of the complaint, and that's whether or not Wells Fargo, they are running the credit inquiry to determine what services they can provide to this particular individual consumer. It's marketing additional products, right? I think that Wells Fargo clearly argued that, among other things, once they've got customers, the banks do this all the time, that they run credit reports to market additional products to their customers and to make sure they're credit worthy for those. It's not clear to me on the face of the complaint that that's what's being alleged here. My point was I think that's what Wells Fargo argued to the district court. My understanding of it is a little bit different, and I do, I respect the court's interpretation, but the way that I read the proceedings before the lower court is it's the eligibility for continued services that might implicate this consumer checking account. So that can be read two ways. One can be read that it's eligibility as in we need to make sure that you're, we're continuing the process of opening the account, I guess, even though what we have is the account had been open, or eligibility for marketing additional products. But even then, we'd have to construe that in the light most favorable to Patterson, not to Wells Fargo. Yes. Yeah, I mean, yes, this court would have to construe it in the light most favorable to Patterson. But what the judge thought the reasonable purpose was. So we read the court, the lower court's opinion, as looking at the allegations in the Second Amendment complaint. And they both, the court also talks about identity verification. It does note as to Patterson, as your court is articulating, as Your Honor is articulating here, that that may not apply after they had already run the original identity verification. She makes that into her order. Yes. Correct. She writes that into her order. And then the court goes on and says that there was additional, I think it's, and I'm blanking on the exact language, but the court then reads an additional language. And I believe the court was interpreting the allegations in the complaint. And I understand that Plano's position is that the court was bringing in allegations that were outside the face of the complaint. And what I would encourage this court to do is conduct a de novo review and look at the allegations that are in the complaint. And reading them, I mean, if you're looking at what Wells Fargo did as to the plaintiffs Adams and Jordan, they opened the account, and it's almost simultaneous. They're running this EWS inquiry. Now, the inquiry comes back after they have already opened the account, and I acknowledge that. But it is all part of this kind of fluid identity verification. The court said because Wells Fargo obtained the credit report after it had already opened the account, it does not appear that Wells Fargo used the consumer reports to verify plaintiff's identities. Is your contention that she was mistaken in this regard? It is our contention that on the face of the complaint, I think you can read that Wells Fargo was submitting these inquiries with early warning services to verify the identities of the individual applicants. Okay. The order goes on to say the court finds that Wells Fargo had a permissible purpose, and that cites to Second Amendment complaint at 186. What do you think the district court meant there as identifying? What do you think the permissible purpose was? And, Your Honor, I'm trying to remind myself of the language in her order. I believe the court stated 15, if that's helpful, or page 12 of her order. Thank you, Your Honor.  It goes on to say Wells Fargo argues that inquiries on a bank's customer's credit report are a routine process, including to assess whether the customer qualifies for pre-approved credit or for potential credit limit increases. Hence my comment about marketing services. I think my read of the record is that is the argument that was made to the district court, and actually there are three statements on page one of the blue brief, or forgive me, of Wells Fargo's red brief, opposition brief on appeal, that presses this point to the district court, but I don't think you ever argued Pintos to the district court. That seems to be noticeably absent here. Your Honor, I don't believe we argued Pintos to the district court because we didn't view and don't view Pintos to necessarily control the decision here because it did relate to a different provision of 1681B. But they have to have a permissible purpose, and I don't mean to belabor the point, but you think the permissible purpose was what? I mean, Your Honor, I think it is eligibility for services, and I think it's a continued identity verification. All right, so let me just ask you, is it your view that the banks can do that as long as they have a current customer, regardless of whether that is a consumer-initiated transaction? If it's a current customer, regardless of whether it's a consumer-initiated transaction, I'm not sure I understand that question, Your Honor. I'm going back to what Judge Forrest had to say. I think that what the district court understood is that you're arguing banks do this all the time for current customers. They run credit reports all the time for the reasons that the judge has mentioned here on page 12 of her order. What Judge Forrest asked is the same question I have. Whether banks do it all the time or not, I'm looking for legal authority to do that. I found one provision that I mentioned to opposing counsel, if the bank is making a firm offer of credit. That's a defined term of art, and I don't think there's any indication that the bank was making a firm offer of credit to these folks. I agree with that, Your Honor. Okay, so I appreciate that. So I'm looking for what you think the permissible purpose was. I mean, in reading the facts that are alleged in the complaint, I think the fact that the account opened as to Adams and as to Jordan, and then I don't think we can read out the identity verification. I understand that the account was opened, but at that moment, all that was provided to the bank was the application. They hadn't had the opportunity to verify. Now, I understand sequentially in terms of time it seems a bit confusing, but I would ask this court to consider that it was a fluid process. They were seeking to verify the identity of the individuals that were applying to open those accounts, and that was part of the reason that they ran this credit and grew with early warning services. How do we know that from the record? I mean, my concern is we're at 12B-6, and all of what you say may be absolutely true, but we don't have an answer to the complaint. We don't have any discovery, and we don't know. When you're talking about the fluid process, that seems to say to me there are some issues of fact to be developed. So why is this appropriate on 12B-6? I'm not saying you aren't ultimately right. My concern is we're jumping the gun a little bit at 12B-6. Yes, and I understand your concern, Your Honor, but I think as we evaluate the allegations of the complaint, it's our view that if this case were to proceed to summary judgment, it's not clear to us that the facts would necessarily change the fact that the early warning services request for each one of these individuals did happen either simultaneous to or immediately after the account opening. So we're reading the facts as alleged on the complaint, and I'm not sure that moving this to summary judgment would necessarily shed more light on this. And if I may, Your Honor, one point that I would be remiss not to address here before the court is that even if this court finds itself unable to determine whether or not Wells Fargo had a permissible purpose here, I still think that the court was correct in dismissing this case on a motion to dismiss on the question of CNTER, because I think plaintiffs have failed to adequately allege a willful violation, whether knowing or reckless. And if you move to whether or not they've alleged a negligent violation of the provisions of FCRA, it's our position that they failed to do so, at least in terms of whether or not there was a breach of a duty. I mean, the question is, as we've been talking about, as to two of the named plaintiffs, the bank was not acting in the face of any conflicting PII at the time that it requested this report from Early Warning Services. And even then, they failed to specifically allege actual damages. There are speculative allegations as to actual damages, and their failure to offer specific allegations as to their allegations of distress or harassment to tie those allegations of stress or harassment to the FCRA violation, which is the pulling of the credit report. And I think that's where the court found that they were lacking in specificity and unable to sustain a claim for a negligent violation of the statute. And seeing that there are no further questions from the panel, we ask the court to affirm the judgment of the district court. Thank you. We'll hear from opposing counsel, please. Your Honors, I think the only point that we would make is that the complaint alleges with respect to all three that Wells Fargo made two separate pulls. And the complaint alleges with respect to Patterson and Adams that at the time that Wells Fargo pulled the early warning reports, it had false PII for both Patterson and Adams. That's the basis of your allegation that it was a no-wing violation, right? The basis is that Wells Fargo, as a bank with a responsibility to the financial community, the banking system, and its customers, has a duty not to open bank accounts. Counsel, I would take yes for an answer if I'm understanding it. But I think that's the only thing you've got that allows you, at this point, to survive 12B6 on the no-wing violation. Is there something I'm missing? No, Your Honor, that's it. Okay, go ahead. And then, finally, I think the important thing about the violation itself is 1681BF has two components. The first is that they have a permissible purpose. The second is that they, in fact, certify their permissible purpose consistent with 1681E's provisions. And we do not allege a certification, and that's another thing that, you know, is untested and undecided at this point. Would you mind addressing actual damages before you sit down? I mean, you had a fairly lengthy colloquy with the district court where the district court probed you on actual damages, and basically your answer was, we don't have to show it if I understand your position. Your Honor, I think that the position is that for an intrusion upon seclusion type violation, which is what we have here with a BF violation, right, a non-authorized credit pull, that is like somebody reading your diary or somebody, you know, getting into your personal business that you have not chosen to disclose, which Congress deemed fit to protect under the Fair Credit Reporting Act. And therefore, by intruding upon that seclusion, and Wells Fargo has every incentive to get that information. What's your best authority for that? I mean, the statute says you've got to have actual damages. So what's your best authority to say that you can do something conclusory? Spokio. Which is a standing case. It's a standing case, but the case talks about intrusion upon seclusion, which we all know from, you know, elementary torts, assumes damages upon a finding of the violation. Are you relying on Spokio 2 or 3, or which Spokio are you relying on? You've stumped me, Your Honor. I'm sorry. Are you relying on Ninth Circuit Spokio? No, no, sorry, Justice Alito's opinion in Spokio. Okay. So if the district court is correct that you did not articulate a viable case of actual damages, where does that leave you? That leaves the willful claim, Your Honor. And I see my time is up. I have one last question. So I guess you're basically telling us that you couldn't say anything more about actual damages if you were given the chance. We've alleged emotional distress. We've described the efforts that the plaintiffs ---- But if we say that's wrong as a matter of law, then the question is whether or not we should say, here is the rule of law, go back and apply it, or whether we should say you had your shot and you have argued that you can't show actual damages. We would argue that the allegations, although they are admittedly plain and relatively bare, emotional distress and humiliation, et cetera, are nevertheless for this type of violation precisely the type that would be implied. Okay, so you said that like three times, but now you're not answering the question. Is the answer to the question you've done the best you can do, you don't have other actual damages you could show on if given an opportunity to amend? Your Honor, we think that discovery would give us an opportunity to develop our damages claims further. You asked for permission for an opportunity to amend in the district court? My recollection is that we did, yes, Your Honor. Why would discovery help you define your damages? Because you have your clients. They know whether they've been injured or not. So what can you get from discovery on damages that you couldn't ask your clients? Well, I think, Your Honor, we could further develop the details and specifics of their harm. We haven't alleged that they've lost sleep or had diet changes and that sort of thing that are often alleged, in part because this is a class case and we think that the damages model is one that is, again, implied and reserved to the fact finder based on the nature of the injury. Do you know what Wells Fargo did with the credit report or whether or not there was any product or loan that your client missed out on? Not yet, Your Honor, although we do know that Wells Fargo's communication with Mr. Patterson actually solicited him for mortgage products at a time when he was seeking mortgage products, coincidentally, at which time other inquiries about his seeking mortgage products appeared on his early warning report. So there seems to be some suggestion that Wells Fargo didn't merely use these reports for identity verification or fraud checks, but also used it to, you know, develop marketing strategies, which is not consistent with the permissible purposes. But if I recall the transcript, the district court asked you, have you been denied credit? Have you had any financial suffering? Went down a series of questions and your answer was no. That's correct, Your Honor. Thank you. Thank you all for your arguments. We appreciate it very much. We'll take these cases under advisement and stand in recess for the day. All rise. This court for this session stands adjourned.
judges: THOMAS, CHRISTEN, FORREST